# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| MINTO EXPLORATIONS LTD., | ) | |
| | ) | |
| Plaintiff, | ) | 3:11-cv-00031 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| PACIFIC AND ARCTIC RAILWAY AND NAVIGATION COMPANY, | ) ) | [Re: Motion at Docket 11] |
| | ) | |
| Defendant. | ) ) | |

## I. MOTION PRESENTED

At docket 11, defendant Pacific and Arctic Railway and Navigation Company ("PARN") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count II of plaintiff's complaint for failure to state a claim upon which relief may be granted. In the alternative, defendant PARN moves to dismiss Count II on the grounds that the Federal Maritime Commission has primary jurisdiction over the claim. At docket 17, plaintiff Minto Explorations Ltd. ("Minto") opposes the motion. PARN replies at docket 23. Oral argument on the motion was heard on August 4, 2011.

## II.  BACKGROUND[1]

Minto is a British Columbia corporation with its principal place of business in Yukon Territory, where it operates a copper ore mine.  PARN is the owner and operator of a dock open to the public in Skagway, Alaska.  Adjacent to the dock is a support for a ship loader facility, which is connected to an ore terminal.  PARN is the prior owner of the ship loader facility and ore terminal.  In July 1990, PARN sold the ship loader facility and ore terminal to Alaska Industrial Development and Export Authority ("AIDEA") through a purchase agreement ("Purchase Agreement").

Section 1.10 of the Purchase Agreement states in pertinent part:

1.10 Use of Dock:

    (a)    Subject to (b) below, [PARN], in servicing AIDEA, its agents, or other users of the Purchased Assets, will use its best efforts to provide dockage to ore ships, at the Dock, in an expedient fashion and AIDEA, its agents and other users of the Purchased Assets will adhere to the rules and regulations relating to dockage of [PARN] and any regulatory authority having jurisdiction over the Dock.

    (b)    AIDEA, its agents, or other users of the Purchased Assets will have the right for the Term to use the Dock for ore ships arriving to load outgoing free flowing bulk mine products that will be loaded from the Terminal and for the purposes normally granted to users of the Dock in consideration of payment of the dockage charge and for the purpose of tying and untying ore ships and operating, repairing and maintaining the ship loader and for all related activities...

    (c)    (i)    Except as provided in (ii) below, for ore ships arriving to load outgoing free flowing bulk mine products that will be loaded from the Terminal, AIDEA will pay or cause to be paid to [PARN] an all inclusive dockage charge at the then current ore ship tariff rates of [PARN] as posted at Skagway, Alaska, or on file with the appropriate government regulatory agency.

        (ii)    For ore ships arriving to load Curragh's outgoing free flowing bulk mine products, AIDEA will pay or cause to be paid to [PARN] an all inclusive dockage charge of $US 3.00 per foot per each period of 24 hours (with any partial periods

---

[1]For purposes of this Rule 12(b)(6) motion, the court takes the factual allegations in plaintiff's complaint as true and construes them in the light most favorable to plaintiff.

> considered a full 24 hours), plus (during the period October 1 to May 15 of each year) $US 0.25 per foot per each period of 24 hours (with any partial periods considered a full 24 hours), each escalated on January 1 of each year by the increase since the preceding January 1 in the Consumer Price Index, all items Seattle, Washington, which shall be the only charge payable for use of the Dock for Curragh's outgoing free flowing bulk mine products.

In January 2007, AIDEA and Minto entered into a user agreement for the ore storage and loading facilities ("User Agreement"). Section 1(c) of the User Agreement states:

> c. Dock. All rights to use the Dock allowed under the Purchase Agreement, subject to AIDEA's right to allow Other Users to use the rights to use the Dock under the Purchase Agreement. To facilitate [Minto's] use of the Dock pursuant to the terms of the Purchase Agreement, AIDEA and [Minto] state that they intend [Minto] to be an "other user" under the provisions of paragraph 1.10 of the Purchase Agreement.

Minto pays AIDEA for use of the AIDEA owned facilities while loading and shipping copper concentrate.

On October 25, 2007, Minto shipped copper ore from Skagway with a vessel tied up to PARN's dock. After the shipment, PARN delivered an invoice to Minto with a wharfage charge. PARN's standard practice is to deliver an invoice to Minto for every shipment of copper ore from Skagway. To date, Minto has paid PARN $117,617 in wharfage charges. Minto has not paid PARN for wharfage invoices in the total of $64,473. Minto has deposited $165,124.91 into an escrow account at First National Bank of Alaska, representing wharfage due on ore shipment beginning August 2009, and continues to deposit wharfage charges into the escrow account.

On March 4, 2011, Minto filed a complaint alleging three claims against PARN: 1) breach of contract; 2) discrimination in violation of AS 42.30.020; and 3) a request for a declaratory judgment that PARN cannot charge ships transporting ore for Minto a higher dockage fee or tariff than it charges other vessels, PARN's current dockage fee for ships transporting ore for Minto is unlawfully discriminatory under AS 42.30.020, and the

imposition of "an additional fee of wharfage without landing, loading or unloading its goods on the dock is unreasonable and a violation of AS 42.30.020."[2]

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.[3] In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[4] "Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss."[5] To avoid dismissal under Rule 12(b)(6), plaintiffs must aver in their complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[8]

### IV. DISCUSSION

As a preliminary matter, the court notes that both parties attached materials beyond the pleadings to their briefing. Rule 12(d) provides that if, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The

---

[2] Doc. 1 at p. 7.

[3] *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

[4] *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

[5] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[6] *Al-Kidd v. Ashcroft,* 580 F.3d 949, 956 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted)).

[7] *Iqbal*, 129 S.Ct. at 1949.

[8] *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

court declines to treat PARN's motion to dismiss as a motion for summary judgment and will not consider the materials outside the pleadings filed by the parties.

Count II of Minto's complaint alleges that PARN discriminates against Minto in violation of AS 42.30.020 by charging ships hired by Minto to ship ore concentrates a higher per foot dockage fee than other ships using PARN's dock and by charging Minto a wharfage fee in addition to a dockage fee. Alaska Statute 42.30.020 provides in pertinent part:

> (a) Every person operating a public service plant or undertaking wholly or partially in a city for the furnishing of telephone service, water, power, lighterage, wharfage, dockage, storage, heat or light or kindred public service shall serve everybody alike without discrimination, and without denial, except for good and sufficient cause. Every person undertaking to supply this public service shall adopt reasonable rules and regulations for the conduct of the business and the operation of the public service plant. The rules and rates of charges for service shall be given fair and reasonable publicity.[9]

PARN moves to dismiss Count II of Minto's complaint on the grounds that it fails to state a prima facie claim of discrimination under AS 42.30.020 because Minto is the only ore ship using the dock and passenger ships are a different class of ship than ore ships. Alternatively, PARN moves to dismiss Count II because the Federal Maritime Commission ("FMC") has primary jurisdiction over the claim. The court addresses PARN's primary jurisdiction argument first.

PARN argues that the court should dismiss Count II because under the Shipping Act,[10] the FMC has primary jurisdiction over tariff discrimination claims against marine terminal operators and PARN is a marine terminal operator as defined in 46 U.S.C. § 40102(14).[11] Minto contends that FMC does not have primary jurisdiction over Count II because Count II alleges a violation of a state statute, not a violation of the Shipping Act.

---

[9] AS 42.30.020(a)

[10] 46 U.S.C. § 40101 *et seq.*

[11] Doc. 11 at p. 6.

PARN replies that despite the fact that Count II alleges a discrimination claim under AS 42.30.020, the Shipping Act applies to Minto's discrimination claim and primary jurisdiction over the discrimination claim is properly vested in the FMC. The court concurs. The Shipping Act "provides for the comprehensive regulation of the shipping industry in the United States."[12] The FMC "is an independent regulatory agency of the United States charged with the administration and enforcement of the [Shipping] Act."[13] The Shipping Act applies to a "shipper," which is defined as including "a cargo owner" and a "person for whose account the ocean transportation of cargo is provided."[14] The Act also applies to a "marine terminal operator," which is defined as a "person engaged in the United States in the business of providing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier..."[15] A "common carrier" is defined as a person that "provide[s] transportation by water of passengers or cargo between the United States and a foreign country for compensation."[16] Based on the above definitions, Minto is a shipper and a common carrier, and PARN is a marine terminal operator that provides dock facilities to common carriers.

The Shipping Act allows parties to enter into agreements and prohibits certain discriminatory acts. Pursuant to 46 U.S.C. § 41106, a marine terminal operator may not:

> (1) agree with another marine operator or with a common carrier to boycott, or unreasonably discriminate in the provision of terminal services to, a common carrier or ocean tramp;
>
> (2) give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any person; or

---

[12] *Maritrend, Inc. v. The Galveston Wharves*, 152 F.R.D. 543, 548 (S.D. Texas, 1993).

[13] *F.M.C. v. Port of Seattle*, 521 F.2d 431 (9th Cir. 1975).

[14] 46 U.S.C. § 40102(22).

[15] 46 U.S.C. § 40102(14).

[16] 46 U.S.C. § 40102(6).

(3) unreasonably refuse to deal or negotiate.[17]

Count II of Minto's complaint alleges that PARN has discriminated against Minto by charging its ships more for dockage and wharfage than the rate it charges for other ships using its dock. Taking the complaint's allegations as true as the court must for purposes of a Rule 12(b)(6) motion, § 41106 proscribes PARN's conduct.[18] During oral argument, it became clear that Minto is the only ore shipper currently using the Dock and that Minto's discrimination claim is based on the fact that PARN charges a lower per foot length for passenger vessels over 400 feet than it does for ore ships over 400 feet in length. The parties did not cite any controlling authority as to whether a marine terminal operator may charge different types of vessels different dockage rates.

The doctrine of primary jurisdiction "relates to which tribunal, judicial or administrative, should first act."[19] The doctrine, which expresses deference to administrative agencies and concern for conserving judicial resources, "is particularly appropriate where, as here, the contested issued may first be litigated through established agency procedures."[20] "Where there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved."[21]

Four factors are uniformly present in cases where the court invokes the doctrine of primary jurisdiction: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory

---

[17] 46 U.S.C. § 41106.

[18] *Maritrend*, 152 F.R.D. at 548.

[19] *Casey v. F.T.C.*, 578 F.2d 793, 798 n.8 (9th Cir. 1978).

[20] *Id.* at 798.

[21] *U.S. v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987) (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68 (1970)).

scheme that (4) requires expertise or uniformity in administration."[22] Consideration of those factors shows that the doctrine of primary jurisdiction should be applied here. Minto's discrimination claim is governed by provisions of the Shipping Act, which provides a "comprehensive regulatory scheme for the shipping industry under the administration of the FMC."[23] In addition, resolution of Minto's tariff discrimination claim requires the FMC's expertise, particularly with regard to whether a marine terminal operator may lawfully charge different rates for ore ships and passenger ships. Finally, Minto's state law discrimination claim is based on the same facts and theory as one brought under the Shipping Act. "When a claim 'both in the nature of the conduct complained of and the relief sought' is one which could have been brought under the Shipping Act ..., the claim may first be properly submitted to the FMC."[24]

Minto contends that the court should not dismiss Count II because Minto's complaint also seeks injunctive relief which the "FMC is not authorized to grant." Having carefully reviewed Minto's complaint, the court does not find a request for injunctive relief, but rather a request for a declaratory judgment that "PARN cannot charge ships transporting ore for Minto a higher dockage fee or tariff than what PARN charges other vessels for use of the dock," "the current dockage fee or tariff imposed on ships transporting ore for Minto by PARN is unlawfully discriminatory," and "the imposition of an additional fee of wharfage without landing, loading or unloading its goods an the dock is unreasonable and a violation of AS 42.30. 020."[25] Moreover, to the extent Minto's complaint can be construed as seeking injunctive relief, Minto's argument is unavailing because 46 U.S.C.§ 41306(a) provides that "[a]fter filing a complaint with the [FMC] under section 41301 of this title, the complainant may bring a civil action in a district court of the United States to enjoin conduct in violation of this part."

---

[22] *General Dynamics*, 828 F.2d at 1362.

[23] *Maritrend*, 152 F.R.D. at 555.

[24] *Id.* (quoting *A & E Pacific Construction Co. v. Saipan Stevedore Company, Inc.*, 888 F.2d 68, 72 n.6 (9th Cir. 1989)).

[25] Doc. 1 at 7.

Because both parties to this suit are subject to the Shipping Act's provisions and PARN's conduct as alleged in Minto's complaint is proscribed by the Shipping Act, the court concludes that Minto's discrimination claim is subject to FMC's primary jurisdiction. Consequently, the court must determine whether to stay this action "or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice."[26] Here, Minto's complaint seeks damages for past conduct, as well as relief from continuing conduct. Because a damage action for past conduct is subject to the applicable statute of limitations and may be barred by the time the FMC acts, the court will stay this action instead of dismissing it.[27]

## V. CONCLUSION

For the reasons set out above, defendant's motion at docket 11 to dismiss Count II of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED WITHOUT PREJUDICE** on the grounds that plaintiff's discrimination claim is subject to the primary jurisdiction of the FMC. Count II of plaintiff's complaint is **REFERRED** to the FMC for a determination on any and all issues within its jurisdiction. It is **FURTHER ORDERED** that this action is **STAYED** pending the outcome of the FMC's proceedings.

DATED at Anchorage, Alaska, this 12th day of August 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[26] *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).

[27] *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 223 (1966).